McKinney, J.,
delivered the opinion of the court.
This is a case somewhat novel in its character. It has all the forms of a regular suit in equity. The object of the bill is, to recover from the clerk and master of the chancery court at Springfield, a sum of money received and retained by him under an improvident order of the chancellor, in a former cause between the same parties; as an allowance for services *324 rendered in said cause, for which, as is alledged, he was not by law, entitled to any compensation; and of which allowance the complainants say they were ignorant until after the final determination of said cause.
The mode of .proceeding adopted, is much more formal, tedious and expensive than was at all necessary to attain the object desired, a simple petition to the chancellor would have been sufficient; and, as such, we are disposed to treat the bill.
The facts of the whole case appear to be, that upon the application of the administrator of the estate of William Pope, deceased, to the chancery court at Springfield, the chancellor decreed the sale of some thirty slaves belonging to said estate, The decree directed the sale to be made by the clerk and master of said court upon a credit, and required that bond and security should be taken from the purchasers payable to the clerk and master. Pursuant to this decree the slaves were sold, and at the ensuing term the sale was confirmed, and an allowance of $100 made to the clerk for his services in making said sale, being the commission given by the act of 1842, ch. 91, sec. 1, upon the amount of the sale.
At a subsequent term of said court, the administrator exhibited his bill against the distributees of the estate, to have an account of advancements, and for the distribution and final adjustment of the estate. An account was taken, and by the decree in the cause, it was made the duty of the clerk and master to collect and distribute the proceeds of the sale of said slaves; the notes of the purchasers being payable to him and in his hands. This decree was executed by the clerk and master. The proceeds of the sale of slaves amounted to $13,562. He also received and distributed the additional sum of $1,752 assets belonging to said estate, making in the aggregate $15,314. For his services in receiving and distributing this fund, the chancellor, at a term subsequent to the decree, ordered that he should be allowed to retain out of a fund *325 in his hands belonging to the estate, a commission of two and a half per cent on the gross amount, being the sum of $377 79 cents. This allowance, it is alledged, was unauthorized by law, and is sought to be recovered by the present proceeding.
The discretionary power of the chancellor to make allowances for services rendered by the clerk and master, in the •capacity of receiver, or special commissioner, is not an arbitrary or unlimited power, as is sometimes supposed; on the contrary, it is restricted and circumscribed within narrow bounds, extending only to services of an extraordinary nature, for which the law has provided no specific fee or compensation.
The statute regulating fees in chancery, prescribes a specific compensation for the ordinary services of the clerk and master in a suit in equity; and expressly declares that “no higher fees” shall be received.
The act of 1842, above referred to, prescribes the compensation to be made to the clerk and master, or special commissioner, for sales of real or personal estates under a decree of the court; and, in express terms, provides that “no other allowance shall be made” for executing such decree.
The compensation is as follows, namely : “at the rate of four dollars, for the first hundred dollars; at the rate of three dollars, for every hundred dollars over one and not exceeding three hundred dollars; and at the rate of two dollars, for every hundred dollai’s over three and not exceeding five hundred dollars; and at the rate of one dollar and fifty cents, for every hundred dollars over five hundred, until his fees shall amount to one hundred dollars; and in no case shall his fees or commissions exceed the sum of one hundred dollars.”
These statutory regulations on the subject of fees, are peremptory, and leave no discretion to the chancellor. But there occur, not infrequently, in the course of chancery causes, incidental duties and services necessary and proper to be per *326 formed; and which the chancellor may cause to be performed through the medium of a receiver or special commissioner • and the clerk and master in most cases, may as well be appointed such receiver or commissioner as a third person. These duties, not apertaining to the ordinary or proper functions of the clerk and master, the law has not, except to the extent of the provisions of the act of 1842, prescribed compensation; and it necessarily follows, that, the chancellor, having power to direct their performance, and being necessary and proper to effect the purposes of the suit, has the incidental power of making just compensation for the services rendered. But this is the extent of his power. Wherever the legislature has fixed a specific compensation, a fee for a particular service, all discretion on the part of the chancellor, to make an additional allowance is precluded.
In the case under consideration, if the sale of the slaves had taken place under an order of the chancellor made in the cause for an account and distribution of the estate, it is clear that, for his services in making the sale, collecting and paying over the proceeds, no other allowance could have been made to the clerk and master than the rates of compensation fixed by the act of 1842.
But the sale was in a different and previous suit. The allowance of $100 in that proceeding, for merely making the sale of the slaves, was an error on the part of the court founded on a misapprehension of the meaning of the act. The sale was but the labor of a few hours. The compensation given by the act is not merely for the act of selling, but mainly for the trouble and responsibility of receiving, keeping, and disbursing the proceeds; and for all this service, it is perhaps reasonable compensation. If payment is not promptly made, the chancellor may render judgment and award execution, for which the clerk and master receives, in addition, the ordinary fees. But, the error in the allowance of the $100 *327 was acquiesced in, and perhaps could not be well reached in the subsequent suit. In the latter case, however, the chancellor had no authority to allow a commission of two and a half per cent for collecting and disbursing the proceeds of the slaves; nor any other allowance than the rates of compensation fixed by the act of 1842, and that only to the extent of the actual receipts and disbursements of the money. If to any considerable extent the notes of the purchaser were merely passed to the distributees and received by them in satisfaction of their respective shares, in whole or part, thus far the clerk and master would be entitled to no compensation beyond what he had previously received for making the sale. The amount to which the clerk and master will be entitled, according to the rates prescribed in the act of 1842, will be ascertained ; and the excess of compensation received under the chancellor’s order will be refunded.
The decree of the chancellor dismissing the complainant’s bill be reversed.